***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, modifies and affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employment relationship existed between the parties at all times relevant to these proceedings.
3. Defendant-Carrier provided workers' compensation insurance coverage for this matter, and is correctly named above.
4. Plaintiff's average weekly wage was $268.32 at all times relevant to these proceedings, yielding a compensation rate of $178.97.
5. Defendants agree that Plaintiff sustained a work-related injury on or about December 6, 2007. Defendants contend that Plaintiff reached maximum medical improvement with regards to any injuries she may have sustained as a result of her December 6, 2007 work injury.
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — Executed Pre-Trial Agreement;
 b. Stipulated Exhibit Two (2) — Plaintiff's medical records;
 c. Stipulated Exhibit Three (3) — North Carolina Industrial Commission forms and filings;
 d. Stipulated Exhibit Four (4) — Plaintiff's personnel file;
 e. Stipulated Exhibit Five (5) — Discovery responses.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff's current back complaints are causally related to her December 6, 2007 work injury? *Page 3 
2. Whether Plaintiff remains disabled?
3. Whether Plaintiff is entitled to any workers' compensation benefits at this time?
4. Whether Defendants are entitled to a credit for overpayment of temporary total disability compensation?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 30 years old, with a date of birth of April 14, 1978. Plaintiff has a high school diploma, and is studying computer programming at Coastal Carolina Community College in Jacksonville, North Carolina. Plaintiff started working for Defendant-Employer in a full-time capacity as a customer service representative at its Jacksonville, North Carolina call center in 1999. Plaintiff's job duties, which were sedentary in nature and typically performed in a seated position, included answering telephone calls from post office customers, attempting to address their concerns, and entering data about the customers into a computer terminal through the use of a keyboard.
2. On December 6, 2007, Plaintiff was walking down an aisle while working for Defendant-Employer when she tripped on a cord, falling onto her left side. Plaintiff claimed injuries to her spine, buttocks, left hip, and other areas. Defendants accepted the compensability of Plaintiff's December 6, 2007 work injury via a Form 60 dated September 16, 2008, which described the work injury as a "lumbar strain."
3. Defendants began paying to Plaintiff temporary total disability compensation via a Form 60 dated January 7, 2008 in the amount of $288.80 per week, based on an average *Page 4 
weekly wage of $433.20. The Form 19 completed by Defendants on December 14, 2007 indicated that Plaintiff worked nine (9) hours per day, five (5) days per week at a pay rate of $10.83 per hour. The Form 18 completed by Plaintiff on February 5, 2008 listed her average weekly wage as "undetermined." Defendants continued to pay Plaintiff at the higher compensation rate until September 16, 2008, when they adjusted the rate downward to $179.97, based upon an average weekly wage of $268.32, as documented on a Form 22 completed by Defendants. Defendants contend that they overpaid Plaintiff for her temporary total disability compensation in the amount of $4,503.03.
4. On December 26, 2007, Plaintiff presented to Dr. Ralph Joseph DiFiore, an orthopaedist, at which time she complained of left shoulder and lower back pain. Dr. DiFiore ordered lumbar magnetic resonance imaging (MRI). In March 2008, Dr. DiFiore interpreted the lumbar MRI as showing no findings that would explain her ongoing lower back pain. Dr. DiFiore prescribed Vicodin for pain as part of his treatment of Plaintiff, but he became concerned about having her continue with long-term narcotic use. Plaintiff expressed to Dr. DiFiore that she had some trouble focusing while on the Vicodin.
5. On April 22, 2008, Dr. DiFiore referred Plaintiff to pain management due to continued lower back pain, and because she was not making progress from what he termed "soft tissue" injuries. In addition, Dr. DiFiore was of the opinion that Plaintiff was showing symptoms of a chronic pain syndrome with regard to her lower back. Dr. DiFiore contemplated a multi-disciplinary approach to pain management for Plaintiff, to include a psychological evaluation because of Plaintiff's "fear avoidance," whereby she did not want to return to work because she thought that it might hurt her to do so. *Page 5 
6. On May 13, 2008, Dr. DiFiore released Plaintiff to return to work at light-duty for half-days, and the next day Plaintiff attempted to return to work with Defendant-Employer. Plaintiff worked in a "side-seating" arrangement, in which she observed a co-worker. Plaintiff left after about three (3) hours, stating that she could not focus or get comfortable. On May 19, 2008, Dr. DiFiore took Plaintiff out of work again, based upon her subjective complaints of pain. However, Dr. DiFiore found no physical basis for Plaintiff's reluctance to return to work. On June 30, 2008, Dr. DiFiore released Plaintiff to return to work from an orthopaedic standpoint, and on July 15, 2008, Plaintiff last saw Dr. DiFiore.
7. On November 18, 2008, Plaintiff presented to Dr. Angelo Anthony Tellis, a pain management specialist, at which time she complained of lower back, left thigh, left shoulder, and neck pain. Dr. Tellis' physical examination of Plaintiff included a positive straight-leg raise test on the left, which is indicative of possible nerve root irritation in her lumbar spine. Dr. Tellis prescribed Plaintiff Flexeril and continued her on Vicodin. In addition, Dr. Tellis ordered a nerve conduction study in order to rule out radiculopathy, but Defendants did not authorize it.
8. On January 13, 2009, Dr. Tellis administered an injection at the sacro-iliac joint in Plaintiff's lower back, which provided her with significant initial improvement of her lower back and left leg pain. Dr. Tellis was of the opinion that Plaintiff's positive response to the sacro-iliac joint injection was further indication that she had nerve root irritation in her lumbar spine that was contributing to her pain. Dr. Tellis recommended physical therapy and a possible repeat sacro-iliac joint injection. In Dr. Tellis' opinion, he does not think that Plaintiff is at maximum medical improvement, and he would keep her on light-duty work restrictions including no repetitive bending, no climbing or squatting, and allowance for frequent position changes. *Page 6 
9. Since August 2008, Plaintiff has been pursuing a computer programming degree on a full-time basis at Coastal Carolina Community College. As of the date of the hearing before the Deputy Commissioner, Plaintiff was attending classes three (3) to four (4) hours per day, taking handwritten notes, and maintaining a grade point average of 3.3, even though she was taking Vicodin during the day and finding it difficult to focus during class. Plaintiff testified at the hearing before the Deputy Commissioner that she was taking two (2) to four (4) Vicodin per day during this time period.
10. As of the date of the hearing before the Deputy Commissioner, Plaintiff was still an employee of Defendant-Employer. Defendant-Employer's job description for the customer service representative position that Plaintiff performed states that the employee may stretch or stand at their work station for short periods at the employee's option, as long as such activity does not interfere with their work or the work of other employees. Subsequent to Plaintiff's failed attempt to return to work for Defendant-Employer on May 14, 2008, she made no further attempts to either go back to work or contact Defendant-Employer.
11. Dr. DiFiore reviewed the job description for Plaintiff's customer service representative position and opined that she could perform those duties, or the duties of any sedentary position, from an orthopaedic standpoint. Additionally, Dr. DiFiore agreed that if Plaintiff can care for her children, perform her activities of daily living, and attend classes, she should be able to perform sedentary work. Dr. DiFiore further opined that Plaintiff's psychological condition of fear avoidance was keeping her from returning to work, and that he did not know whether her December 6, 2007 work injury caused this psychological condition. However, Dr. DiFiore was also of the opinion that Plaintiff's chronic pain syndrome was playing *Page 7 
a role in her failure to return to work, and that her December 6, 2007 work injury was "a trigger" for the chronic pain syndrome.
12. Dr. Tellis opined that the job description for Plaintiff's customer service representative position fell within the restrictions he assigned, particularly given that the position allowed for stretching and standing for short periods of time, and that Plaintiff could return to work in this position. Dr. Tellis further opined that sedation and "mental clouding" are side effects of Vicodin, and that it was "certainly possible" that Vicodin and/or Flexeril use could affect Plaintiff's ability to focus on customers and perform accurate data input. However, it was Dr. Tellis' understanding that Plaintiff was using the Vicodin and Flexeril mostly at night. Further, Dr. Tellis noted that he had Plaintiff on a low dosage of Vicodin, and that her use of it for well over a year would make the side effects "very minimal." Dr. Tellis agreed that in large part, he based his treatment of Plaintiff upon her subjective complaints of pain, although he did note that her favorable response to the sacro-iliac joint injection provided objective evidence of a problem in that area. Dr. Tellis agreed that he had no reason to doubt the sincerity of Plaintiff's pain complaints. The Full Commission gives great weight to the opinion testimony of Dr. Tellis.
13. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff failed to prove that her December 6, 2007 work injury either caused or materially aggravated her psychological condition of fear avoidance.
14. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's continued lower back complaints are causally related to her December 6, 2007 work injury. The Full Commission further finds that the medical treatment Plaintiff received and continues to receive for her lower back complaints is reasonably required to effect a cure, to give relief, and/or to lessen her period of disability, that such treatment continues to be so related. *Page 8 
15. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is not at maximum medical improvement with respect to her compensable lower back injury and that Dr. Tellis should be Plaintiff's authorized treating physician to provide the future medical treatment she requires for her compensable lower back injury.
16. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff is capable of performing sedentary work, and capable of performing the duties required in her customer service representative position with Defendant-Employer, as such position is sedentary in nature. Thus, the Full Commission finds that Plaintiff's refusal to return to her position as a customer service representative with Defendant-Employer after June 30, 2008 constituted an unjustified refusal of suitable employment.
17. The Full Commission finds, based upon the greater weight of the evidence, that because Defendants' overpayment of temporary total disability compensation to Plaintiff from December 6, 2007 through September 15, 2008 was solely attributable to their own error, Defendants are not entitled to a credit for the overpayment due to miscalculation of Plaintiff's average weekly wage. However, the Full Commission further finds that because Plaintiff unjustifiably refused suitable employment as of June 30, 2008, Defendants are entitled to an offset from any compensation owed to Plaintiff for temporary total disability compensation paid to Plaintiff from June 30, 2008 through October 2, 2009, the date of the filing of the Opinion and Award of the Deputy Commissioner, which amounts to $11,740.43.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 9 
1. On December 6, 2007, Plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with Defendant-Employer to her lower back. N.C. Gen. Stat. § 97-2(6) (2009).
2. Plaintiff failed to prove that her December 6, 2007 work injury either caused or materially aggravated her psychological condition of fear avoidance. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory BusinessFurniture, 353 N.C. 227, 538 S.E.2d 912 (2000).
3. Because Defendants accepted the compensability of Plaintiff's lower back condition on a Form 60, she is entitled to a rebuttable presumption that further treatment for her lower back condition is directly related to her December 6, 2007 work injury. Perez v.American Airlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005). Based upon the testimony of Dr. Ralph Joseph DiFiore and Dr. Angelo Anthony Tellis, further treatment as recommended by them for Plaintiff's lower back complaints remains causally related to her December 6, 2007 work injury. Thus, Defendants failed to meet their burden of rebutting the presumption under Perez.Id.
4. Defendants proved that as of June 30, 2008, suitable employment in the form of Plaintiff's customer service representative position with Defendant-Employer remained available to Plaintiff.Kennedy v. Duke Univ. Med. Ctr.,101 N.C. App. 24, 398 S.E.2d 677 (1990). Based upon the opinion testimony of Dr. Tellis and the greater weight of the other evidence of record, the Full Commission concludes that Plaintiff is capable of performing sedentary work, and capable of performing the duties required in her customer service representative position with Defendant-Employer, as such position is sedentary in nature. Plaintiff's refusal to return to work in her customer service representative position with Defendant-Employer after June 30, 2008 and instead focusing her efforts on her coursework constituted an unjustifiable refusal of suitable *Page 10 
employment. As such, Plaintiff's temporary total disability compensation should be suspended for as long as such refusal continues. Allen v. Roberts Elec. Contractors,143 N.C. App. 55, 546 S.E.2d 133 (2001).
5. As a result of Plaintiff's December 6, 2007 work injury, Plaintiff is entitled to have Defendants pay for all medical treatment reasonably related to her lower back complaints, including, but not limited to the treatment recommended by Dr. Tellis. N.C. Gen. Stat. §§ 97-2(19), 97-25 (2009).
6. Plaintiff is not at maximum medical improvement with respect to her compensable lower back injury.
7. Dr. Tellis is hereby designated as Plaintiff's authorized treating physician for the purpose of providing the future medical treatment Plaintiff requires for her compensable lower back injury. N.C. Gen. Stat. § 97-25 (2009).
8. Because Defendants' overpayment of temporary total disability compensation to Plaintiff from December 6, 2007 through September 15, 2008 was solely attributable to their own error, Defendants are not entitled to a credit for the overpayment due to miscalculation of Plaintiff's average weekly wage. Defendants are entitled to an offset for temporary total disability compensation paid to Plaintiff from June 30, 2008 through October 2, 2009, the date of the filing of the Opinion and Award of the Deputy Commissioner, which amounts to $11,740.43.
***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff's temporary total compensation shall be suspended as of June 30, 2008. *Page 11 
2. Defendants are entitled to an offset for temporary total disability compensation paid to Plaintiff from June 30, 2008 through October 2, 2009, the date of the filing of the Opinion and Award of the Deputy Commissioner, in the amount of $11,740.43.
3. Dr. Angelo Anthony Tellis is hereby designated as Plaintiff's authorized treating physician, and Defendants shall authorize and pay for the treatment that he recommends for Plaintiff's December 6, 2007 work injury, according to procedures authorized by the Industrial Commission, including, but not limited to any and all medical treatment which may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability.
4. Defendants shall pay the costs of these proceedings.
This the ___ day of April 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ STACI T. MEYER COMMISSIONER